UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAH MULLENDORE,

     Plaintiff                    Civil Action No.  16-10539

v.                             HON. R. STEVEN WHALEN
                               U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Plaintiff Leah Mullendore ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions.  For the reasons set forth below, Defendant's Motion for Summary Judgment [Docket #28] is GRANTED and Plaintiff's Motion for Summary Judgment [Docket #19] is DENIED.

## I.  PROCEDURAL HISTORY

On October 5, 2012, Plaintiff applied for DIB, alleging disability as of September 30, 2011 (Tr. 150).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on April 30, 2014 in Baltimore, Maryland (Tr. 32). Administrative Law Judge ("ALJ") Scott M. Staller presided.  Plaintiff, represented by counsel, testified from Michigan

by teleconference (Tr. 37-59).  Vocational Expert ("VE") James Prim also testified (Tr. 59-64).  On July 18, 2014, ALJ Staller found that Plaintiff was not disabled (Tr. 17-26).  On December 14, 2015, the Appeals Council denied review (Tr. 1-4).  Plaintiff filed suit in this Court on February 13, 2016.

## II.   BACKGROUND FACTS

Plaintiff, born May 29, 1968, was 45 at the time of the administrative decision (Tr. 26).  She left school after eighth grade and worked previously as a boat assembler and producer of lottery tickets (Tr. 176-177).  She alleges disability as a result of hypertension, a thyroid condition, hyperlipidemia, headaches, Chronic Obstructive Pulmonary Disorder ("COPD"), depression, and problems of the hand, wrist, arm, neck, and spine (Tr. 175).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced the testimony by amending the alleged onset of disability date to August 31, 2010* (Tr. 35).

Plaintiff then offered the following testimony:

She stood 5' 4", weighed 184, and was left-handed (Tr. 36-37).  She was able to drive (Tr. 37).  Her work producing lottery tickets involved production work, a security check position, and data input (Tr. 38).  The work required her to lift up to 35 pounds (Tr. 39).  She also worked previously for a manufacturer of boat doors performing assembly line work (Tr. 39).  The assembly work required her to lift up to 50 pounds (Tr. 39).

Plaintiff stopped working after experienced shoulder problems and fatigue (Tr. 40).  She also experienced constant neck pain which radiated into her left shoulder and arm (Tr. 40).  She attributed the neck pain to four bulging cervical discs (Tr. 41).  She experienced left hand numbness due to Carpal Tunnel Syndrome ("CTS") (Tr. 41).   Breathing problems

-2-

required the use of inhalers (Tr. 41).

Plaintiff also experienced depression, characterized by conflicts (including physical conflicts) with others (Tr. 42). She last hit someone around two months before the hearing (Tr. 42). She experienced panic attacks up to four times a week for which she took Xanax She was no longer interested in work or her former pastime of walking (Tr. 43). At present, she drank alcohol occasionally, but in the past, had abused alcohol (Tr. 43). She had not used marijuana since 2008 (Tr. 44). She experienced anxiety as a passenger in a car and when engaged in a conflict with family members (Tr. 56).

On a typical day, Plaintiff would spend most of her time watching television, icing her back, using an inhaler, and attending doctors' appointments (Tr. 44). She spent around six hours each day sitting in a recliner with her feet elevated (Tr. 54). Plaintiff's daughter drove Plaintiff and Plaintiff's mother to the doctors' appointments (Tr. 45). Plaintiff was able to prepare crockpot dishes, deep fried food, and microwavable meals (Tr. 45). She cooked up to four times a week and was able to care for her personal needs (Tr. 45). She was able to perform the "picking up" aspects of housework and grocery shopped up to twice a week (Tr. 46). Her daughter helped her prepare Sunday dinner, fill out paperwork, and pick up prescriptions (Tr. 53).

Lower back pain, neck pain, and hand numbness prevented Plaintiff from sleeping more than six hours a night (Tr. 47). She used a neck brace at night (Tr. 57). She took medication for hyperlipidemia, hypertension, respiratory problems, back pain, and depression (Tr. 47-48). Her discomfort was not relieved with medication and she experienced the medication side effects of "dizziness, sleepiness, [and] aching" (Tr. 49). She had experienced dizziness en route to the hearing and had fallen as a result of dizziness the previous summer (Tr. 52).

Plaintiff characterized her back pain, with medication, as a "seven" on a scale of one to ten (Tr. 49). Her lower back pain radiated into her left leg and left foot (Tr. 50). She experienced level "six or seven" headaches due to either neck pain or a migraine-like condition every day (Tr. 51). The migraine headaches lasted for up to two days (Tr. 51). She coped with the headaches by reclining (Tr. 51). She was able to stand for around 20 minutes before requiring a position change (Tr. 55). She was unable to lift more than 10 pounds or stoop or crouch (Tr. 55). She experienced difficulty turning her neck (Tr. 58).

### B. Medical Records[1]

#### 1. Records Related to Plaintiff's Treatment

January, 2001 nerve conduction studies, made in response to Plaintiff's report of wrist and neck pain, showed mild CTS on the left (Tr. 367). Notes from later the same month show good results from physical therapy (Tr. 366). August, 2005 imaging studies show a fracture of the wrist (Tr. 369). May, 2007 emergency room records state that Plaintiff attempted to kill herself by taking a combination of Xanax and alcohol (Tr. 393). October, 2008 treating records note a history of alcoholism and depression (Tr. 258-259).

September, 2010 studies show hypothyroidism (Tr. 443). Plaintiff denied other health complaints (Tr. 432). In April, 2011, Plaintiff reported that she had to use her inhaler more frequently but denied other health concerns (Tr. 429). June, 2011 endocrinology records state that Plaintiff exhibited symptoms of hypothyroidism (Tr. 674-676). A physical examination was otherwise normal (Tr. 677). Treating records note no depression, anxiety, or agitation and that Plaintiff exhibited good judgment and memory (Tr. 677). December,

---

[1]Evidence predating the amended alleged onset date of August 31, 2010 is included for background purposes only.

2011 records state that Plaintiff experienced hypertension and right ear pressure (Tr. 426).

February, 2012 records state that Plaintiff continued to smoke a pack of cigarettes a day (Tr. 256). Plaintiff reported headaches and neck pain for the past one to two months (Tr. 253). August, 2012 respiratory studies showed moderately severe COPD (Tr. 371, 459). In September, 2012, Plaintiff reported degenerative disc disease with paresthesia of the lower extremities and ongoing headaches (Tr. 415, 419). Imaging study of the neck showed mild degenerative changes (Tr. 372). The same month, an MRI and MRA of the head were both normal (Tr. 263, 387-388). An MRI of the cervical spine showed only mild degenerative changes (Tr. 261, 382, 481). A CT of the abdomen, pelvis, and lower lung fields showed no abnormalities (Tr. 384, 479). Treating notes from the same month state that Plaintiff was married in October, 2011 (Tr. 411). Imaging studies of the liver from the following month were unremarkable (Tr. 267, 379). A neurological examination was also unremarkable (Tr. 373-374). Plaintiff was advised to quit smoking (Tr. 374). The same month, Razmig A. Haladjian, M.D. examined Plaintiff, noting her reports of left upper extremity pain for the past 14 years and recently worsening hand numbness and tingling (Tr. 488). A neurological examination, showing full muscle strength and the absence of CTS, was unremarkable (Tr. 489). December, 2012 EMG studies showed right-sided cubital tunnel syndrome but no other abnormalities (Tr. 520, 523). The same month, Plaintiff was hospitalized with pneumonia (Tr. 576).

February, 2013 records by Asker Asmi, M.D. note Plaintiff's report of shortness of breath and a persistent cough (Tr. 482). Plaintiff reported good results from an inhaler and that symptoms were static (Tr. 482). Bronchodilator treatment was recommended (Tr. 532). Dr. Asmi noted no wheezing (Tr. 485). Plaintiff was administered a steroid injection to the cervical spine in April, May, October, and November, 2013 (Tr. 497-508). June, 2013

imaging studies of the right knee were unremarkable (Tr. 563). A September, 2013 CT of the brain was unremarkable (Tr. 560, 756). Plaintiff reported a history of hypertension, asthma, and COPD but denied shortness of breath (Tr. 758). She exhibited a normal gait and station and normal cognitive abilities (Tr. 759-760). The same month, Plaintiff underwent minor finger surgery after slamming her hand in a door (Tr. 708). November, 2013 physical therapy records state that Plaintiff experienced 50 percent improvement in symptoms following therapy and injections (Tr. 533, 649). A physical and mental status examination the same month and in December, 2013 were unremarkable (Tr. 764-766, 776-779).

In January, 2014, Plaintiff reported that the injections improved her symptoms for around two months (Tr. 510). February, 2014 EMG studies showed mild lower extremity radiculopathy on the left (Tr. 486). The same month, Plaintiff received another steroid injection (Tr. 513). A March, 2014 MRI of the lumbar spine showed only "very mild disc desiccation and disc bulges at L4-L5 and L5-S1" (Tr. 554). Dr. Haladjian's March, 2014 records state that Plaintiff reported good results from Lyrica (Tr. 490, 516).

## 2. Consultative and Non-Examining Sources

In January, 2013, psychiatrist H. Gummadi, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of substance abuse treatment and a suicide attempt in 2006 (Tr. 422). Plaintiff reported current depression, agitation, and anger due in part to her physical conditions (Tr. 422). She admitted that she was able to cook, clean and care for herself (Tr. 423). Dr. Gummadi noted that Plaintiff appeared depressed but was fully oriented with normal concentrational abilities (Tr. 423-424). He assigned Plaintiff a GAF of "45 to 50" with a "fair" prognosis due to depression, alcohol

abuse, and physical and financial problems[2] (Tr. 424).

The same month, Dyan Hampton-Aitch, Ph.D. completed a non-examining review of the consultative and treating records on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace due to an affective disorder and substance abuse disorders (Tr. 71-72, 77). The same month, Stephen E. Wood, M.D. also reviewed the consultative and treating records, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 73). He found that Plaintiff could balance, stoop, kneel, crouch, crawl, and climb stairs/ramps frequently, but was limited to climbing ladders, ropes, or scaffolds on an occasional basis (Tr. 73-74). He found that Plaintiff should avoid concentrated exposure to vibration and airborne hazards (Tr. 74). He noted that Plaintiff continued to smoke despite experiencing symptoms of COPD (Tr. 74).

### C. VE Testimony

Citing the *Dictionary of Occupational Titles,* (*"DOT"*), VE Prim classified Plaintiff's past work as a boat assembler as semiskilled and exertionally medium; general data entry clerk, light/semiskilled; security guard, light/semiskilled; inspector/hand packer, light/unskilled (medium as performed)[3] (Tr. 59). The ALJ then posed the following question,

---

[2]A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (4th ed.2000)("*DSM-IV-TR*"), 34.

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [N]o greater than light work as defined in the regulations. They could
> frequently climb ramps and stairs; occasionally climb ladders, ropes, or
> scaffolds; they could frequently balance, stoop, kneel, crouch, or crawl; but
> they must avoid concentrated exposure to dust, fumes, gases, odors, poor
> ventilation, and other pulmonary irritants; they must avoid concentrated
> exposure to excessive vibrations; they could frequently handle or finger with
> both upper extremities; and that they could frequently reach with both upper
> extremities; that they would be able to understand, remember, and carry out
> simple instructions, make judgments on a simple, work-related decisions; they
> could interact appropriately with supervisors and coworkers in a routine work
> setting; they could interact appropriately with the public; they could respond
> to usual work situations and to changes in a routine work setting; they could
> maintain attention and concentration for two-hour segments over an eight-hour
> period; and that they could complete a normal work week without excessive
> interruptions from psychologically or physically-based symptoms. Based on
> all of these restrictions, could such a person do any of Ms. Mullendore's past
> work? (Tr. 60-61).

Based on the hypothetical limitations, the VE found that the individual would be unable to

perform Plaintiff's past relevant work, but could perform the light, unskilled work of a ticket

taker (52,000 jobs in the national economy); non-postal mail clerk (73,000); and information

clerk (57,000) (Tr. 63). The VE testified that if the same individual were limited to sedentary

work, she could perform the work of an addresser clerk (30,000); order clerk (46,000); and

document preparation clerk (245,000) (Tr. 62). He testified further that the need to be off

task more than 20 percent of the workday at either the light or sedentary exertional level

would eliminate all competitive employment, noting that an employee could be off task no

more than 10 percent of the workday to maintain employment (Tr. 62). He stated that the

need to miss more than one day of work each month on a regular basis would eliminate all

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

competitive employment (Tr. 63).  In response to questioning by Plaintiff's counsel, the VE testified that a restriction to "occasional" use of the bilateral upper extremities would eliminate all of the above-stated positions (Tr. 63).  The VE found that if the same individual were alternatively limited to "no interaction with the public and only occasional interaction with coworkers and supervisors," only the non-postal mail clerk, addresser, and document preparation positions would be available (Tr. 63).  He stated that the need to raise the legs to waist level while working would eliminate all competitive employment (Tr. 64).

### D.  The ALJ's Decision

Citing the medical records, ALJ Staller found that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, [COPD], hypothyroidism, [CTS], obesity, major depressive disorder, and alcohol abuse in reported remission" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19).  The ALJ found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 20).  The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [M]ay only frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds.  The claimant can frequently balance, stoop, kneel, crouch or crawl.  She can frequently reach bilaterally with her upper extremities, and she can frequently handle and finger bilaterally with her upper extremities. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas, and she should avoid concentrated exposure to excessive vibrations.  The claimant is able to understand, remember, and carry out simple instructions, and the claimant can make judgments on simple work related decisions.  She can interact appropriately with the public, supervisors and co-workers in a routine work setting.  The claimant can respond to usual work situations and to changes in a routine work setting.  She can maintain concentration and attention for two hour segments over an eight-hour period, and she can complete a normal work week without excessive

interruptions from psychologically or physically based symptoms (Tr. 21).
Citing the VE's testimony, the ALJ found that Plaintiff could perform the light, unskilled
work of a ticket taker, mail clerk, and information clerk (Tr. 25 *citing* 62).

The ALJ discounted the alleged degree of physical and psychological limitation,
noting that the imaging and other diagnostic studies showed, at most, mild abnormalities (Tr.
22-23). He noted that the thyroid condition was well controlled with medication (Tr. 23).
He cited February, 2013 respiratory testing results showing no evidence of significant lung
disease (Tr. 23). He accorded "great weight" to Dr. Wood's opinion regarding the physical
limitations and Dr. Hampton-Aitch's findings regarding the mental limitations (Tr. 24).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine
whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of
Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more
than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.
389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*
305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential
and "presupposes that there is a 'zone of choice' within which decision makers can go either
way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.
1986)(en banc). In determining whether the evidence is substantial, the court must "take into
account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health
& Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the
administrative record as a whole, and may look to any evidence in the record, regardless of

-10-

whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### Substantial Evidence Supports the ALJ's Determination

Plaintiff offers a laundry list of undeveloped and in some cases, wholly erroneous arguments in support of remand.  *Plaintiff's Brief*, 11-16, *Docket #19,* Pg ID 864.

Plaintiff asserts first that the ALJ rejected "and/or does not discuss" the conditions of sacral radiculopathy, menometrorrhagia, headaches, and left shoulder tendinitis.  However,

-11-

the ALJ acknowledged that the condition of degenerative disc disease was a severe impairment and noted that she had been diagnosed with lumbar radiculopathy in October, 2012 (Tr. 19-22). However, he reasonably supported his finding that the condition did not prevent Plaintiff from performing exertionally light work on the basis that a March, 2014 MRI of the lumbar spine showed only mild degenerative changes (Tr. 23). Plaintiff's argument that the condition of menometrorrhagia was improperly omitted at Step Two is unavailing for multiple reasons. First, neither the application for benefits nor Plaintiff's testimony indicates that the condition caused work-related limitations. Second, while Plaintiff underwent treatment for menometrorrhagia, none of the evidence shows that the condition created ongoing limitations for 12 months or more as required to show disability under 42 U.S.C. §423(d)(1)(A).

The ALJ also correctly noted that Plaintiff's allegations of disabling headaches were undermined by wholly normal imaging studies of the head and brain (Tr. 22, 387-388, 560). February, 2012 records stating that Plaintiff had experienced significant headaches *for the past two months* undermine her claim that she experienced debilitating headaches from the alleged onset date of August 31, 2010 forward (Tr. 253). The treating records, particularly those created between October and December, 2013, show a generally unremarkable physical and mental condition (Tr. 759-779).

Plaintiff's contention that the ALJ overlooked the left shoulder problems fails for two reasons: First, the ALJ acknowledged the October, 2012 diagnosis of upper extremity radiculopathy, but correctly noted that she experienced reduced symptoms following physical therapy. Second, Plaintiff's argument that she experienced left shoulder tendinitis relies exclusively on records created eight years prior to the alleged onset of disability *Plaintiff's Brief* at 11 (*citing* Tr. 356-368). Evidence of Plaintiff's condition in January, 2001 (notably

-12-

while she was still working) is intrinsically irrelevant to her condition starting on August 31, 2010.

Plaintiff's remaining arguments are similarly meritless. Her claim that the ALJ did not consider Listing 1.02, 1.04 in making the Step Three determination is directly contradicted by the ALJ's statement that he considered both of the listings (Tr. 20). Plaintiff's contention that the ALJ failed to seek a medical opinion as to whether she met a listing is contradicted by Drs. Hampton-Aitch and Wood's respective findings that Plaintiff did not meet or equal any of the Listings for mental or physical conditions (Tr. 71-72, 73-74). Plaintiff's claim that the ALJ failed to explain the weight he accorded the various opinions is defeated by his statement that he accorded "great weight" to Drs. Hampton-Aitch and Wood's opinions (Tr. 24). The ALJ correctly noted that none of the treating sources found that Plaintiff experienced more than minimal limitations (Tr. 24). While Plaintiff revisits her argument that left upper extremity limitations prevent light work, *Plaintiff's Brief* at 13, treating records showing full muscle strength in all extremities and the EMG studies showing only mild abnormalities constitute substantial evidence supporting the RFC crafted by the ALJ.

Plaintiff also argues that the RFC did not account for her moderate limitations in social functioning and concentration, persistence, or pace ("CPP"). *Plaintiff's Brief* at 13. As preliminary matter, the ALJ determined that Plaintiff experienced  "mild" rather than moderate limitation in social functioning (Tr. 20). Dr. Hampton-Aitch's findings of "mild" deficiencies in social functioning support the ALJ's determination (Tr. 71-72).  Further, Plaintiff's argument that the RFC modifiers of "simple, routine" work are insufficient to account for moderate limitations in CPP, *Plaintiff's Brief* at 14, stands at odds with case law from the Sixth Circuit and this district which state that in many cases, the modifiers of

-13-

simple, routine, and unskilled are sufficient to account for moderate concentrational difficulties. *Smith–Johnson v. Commissioner of Social Sec*., 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(moderate concentrational limitations in carrying out detailed instructions and maintain attention and concentration for extended periods adequately addressed by restricting the claimant to unskilled, routine, repetitive work); *Despain v. Commissioner of Social Sec.,* 2014 WL 6686770, *12 (E.D.Mich. November 26, 2014)(same); *Lewicki v. Commissioner of Social Sec.,* 2010 WL 3905375, *2 (E.D.Mich. Sept.30, 2010)(the modifiers of "simple routine work" adequately accounted for the claimant's moderate concentrational deficiencies).[4]  While Plaintiff makes a generalized argument that the RFC does not reflect her full degree of mental and physical impairment, substantial evidence, even a preponderance of the evidence, supports the ALJ's inclusion of some of the claimed limitations and omission of others.

On a related note, Plaintiff faults the ALJ for rejecting the claims of disabling mental limitations on the basis that she had not sought mental health treatment.  She argues that the failure to seek treatment can be indicative of psychological disease. *Plaintiff's Brief* at 15 (*citing Blankenship v. Bowen,* 874 F. 2d 116, 1129 (6th Cir. 1989)).   However in this case,

---

[4]

Plaintiff cites *Ealy v. Commission of Social Sec.,* 594 F.3d 504, 516-517 (6th Cr. 2010) in support of her argument that her concentrational limitations were not adequately addressed in the RFC. However, *Ealy* does not hold that the terms "simple, repetitive," "routine" or similar modifiers are intrinsically inadequate to address moderate deficiencies in concentration, persistence, or pace.  Rather, the *Ealy* Court determined that the modifiers of "simple, repetitive" (drawn from a non-examining medical source conclusion) impermissibly truncated the same source's conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.*, 594 F.3d at 516. The position that "simple and repetitive" or in this case, simple and routine are always insufficient to address moderate concentrational deficiencies reflects an erroneous reading of *Ealy.*

the 500-plus page medical transcript shows that Plaintiff sought treatment for a plethora of conditions on a frequent basis. None of the records show that her ability to obtain proper treatment was compromised by mental health problems. The ALJ also cited a number of treating records by Dr. Haladjian showing that Plaintiff did not experience difficulty interacting with others and did not appear depressed (Tr. 24). My own review of the treating records showing a normal mood and cognitive abilities (Tr. 759-779) support the finding that Plaintiff was at a minimum capable of simple and routine tasks. Thus, the ALJ did not err in finding that the failure to seek mental health treatment undermined the claim of disabling depression.

Plaintiff's final argument that the ALJ failed to provide any reasons for discounting her claims of disability is wholly erroneous. The administrative decision contains a three-page discussion of her allegations and the evidence contradicting them (Tr. 22-24). Moreover, because the findings are well supported and explained, the deference generally accorded an ALJ's credibility determination is appropriate here. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir.2007).

The Court concludes that the determination that Plaintiff was capable of a significant range of unskilled light work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level. *Mullen v. Bowen*, *supra*.

Accordingly, Defendant's Motion for Summary Judgment [Docket #28] is GRANTED and Plaintiff's Motion for Summary Judgment [Docket #19] is DENIED.

IT IS SO ORDERED.

s/R.  Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  March 31, 2017

### CERTIFICATE OF SERVICE

I hereby certify on March 31, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen

-16-